FREDERICK C. McLAUGHLIN, JOHN REYNOLDS and WILDER GOOD-
WIN, Plaintiffs, *v.* LEE McCANLISS, Defendant.

Supreme Court, New York County, February 9, 1933.

*Robert C. Flack* [*Raphael A. Egan* and *Walter H. Pollak* of counsel], for the plaintiffs.

*Davis, Polk, Wardwell, Gardiner & Reed* [*Isidor J. Kresel* of counsel], for the defendant.

FRANKENTHALER, J. This is an action to recover for legal services rendered to the defendant's wife in successfully defending a habeas corpus proceeding brought against her by the defendant for the purpose of obtaining custody of the only child of the marriage. In a separate cause of action plaintiffs, as assignees of the wife, seek a judgment for moneys expended by her in connection with said proceeding.

The defendant demands that the complaint be dismissed on various grounds: (1) That the State Constitution protects a person suing out a writ of habeas corpus from charges other than costs taxed in connection therewith; (2) that a husband's obligation to furnish necessaries for his wife does not extend to legal services performed " in a proceeding to deprive the husband of the custody of his child;" (3) that a husband who makes provision for his wife, living separate and apart from him, in an amount assented to by her as satisfactory, is not liable for " necessaries " furnished to her by others; and (4) that an allowance of alimony in an annulment action previously instituted by the defendant against his wife constituted the exclusive measure of the defendant's duty of support and precluded the plaintiffs from recovering from the latter for " necessaries " furnished by them to the wife.

In addition the defendant disputes the value set upon their services by the plaintiffs and interposes various defenses and counterclaims. These defenses and counterclaims charge that the plaintiffs' illegal and improper conduct made necessary the defendant's institution of the habeas corpus proceeding at great expense to the latter; that the plaintiffs knowingly caused a false answer to be interposed in the annulment action and that this answer was used in the habeas corpus proceeding and raised most of the issues tried out in that proceeding; and that the plaintiffs introduced false testimony at the trial of the habeas corpus proceeding, with knowledge of its falsity. Furthermore, the defendant contends that the plaintiffs' legal services were furnished upon the wife's credit exclusively and that the husband is, therefore, not liable for their payment.

As to the assigned claim for reimbursement for the wife's

expenditures in the habeas corpus proceeding the defendant takes the position that he is not liable because there is no proof that these disbursements were made from the wife's separate estate.

A short *résumé* of the litigation between the defendant and his wife will make for a better understanding of the legal points involved, quite apart from its important bearing upon the value to be placed upon the plaintiffs' services.

The defendant and his wife were married in New York city on April 16, 1923, and continued to reside there until December, 1927, when the defendant left his wife and their child — then almost four years of age — and took up residence in a hotel in Bronxville, Westchester county. In January, 1928, the defendant commenced an action in Westchester county for the annulment of his marriage on the ground that his wife had made false representations as to her legitimacy, her parentage and the moral character of her parents. His complaint also demanded the custody of the child. He was represented by prominent attorneys of New York and Westchester counties, and his wife by the present plaintiffs. After serving her answer, she applied for a counsel fee and her husband joined in the application for a reasonable allowance. The court awarded $7,500. Issues were framed for trial by jury, but the wife, dissatisfied with their form, appealed to the Appellate Division which reframed the issues in the form proposed by the plaintiffs as her attorneys. The husband's applications for resettlement of the order of the Appellate Division, for reargument and for leave to appeal to the Court of Appeals were denied. In July, 1929, the wife moved for further counsel fees and for temporary alimony. The husband submitted over 200 pages of affidavits in opposition, in which many of the charges were made which are now contained in the defenses and counterclaims in the instant action. The court allowed $3,500 as additional counsel fees and disbursements and $1,250 per month as temporary alimony. It is well to note at this point that the order expressly provided that it did not cover such liability as might rest upon the husband for legal services rendered and to be rendered to his wife in the habeas corpus proceeding (which had been begun after the annulment action and was then pending) and for disbursements accrued and to accrue in that proceeding. The husband's appeal from this order resulted in an affirmance and his application for leave to go to the Court of Appeals was denied.

Meanwhile, in April, 1928, while the annulment action was awaiting trial in Westchester county, the husband instituted the habeas corpus proceeding previously referred to against his wife for the custody of their child. The venue of the proceeding was

laid in Dutchess county. The father annexed the pleadings in the annulment action to his petition and stated that in the habeas corpus proceeding he would prove the allegations of the annulment complaint and disprove those set up in the answer thereto. He thereby injected all the issues in the pending annulment action into the habeas corpus proceeding. Hearings were begun in April, 1928, and terminated in January, 1930. The father was represented by the attorneys who acted in his behalf in the annulment action and by eminent counsel from Dutchess county. The mother's attorneys sought an order prohibiting the maintenance of the habeas corpus proceeding during the pendency of the annulment action on the ground that said action already raised the issue as to the proper custody of the child. They were, however, unsuccessful, the Appellate Division deciding in favor of the father. In May, 1930, an order was made in the habeas corpus proceeding awarding the custody of the child exclusively to the father and denying to the mother access to her child except at the father's residence between four and six P. M. on Mondays, and then only if the child was in Greater New York. An appeal was taken by the plaintiffs on behalf of the mother and a temporary stay obtained. The Appellate Division reversed the order and dismissed the proceeding on the ground that the pendency of the annulment action was a bar, as a matter of law, to the maintenance of the habeas corpus proceeding. The Court of Appeals, however, rejected this view and remitted the case to the Appellate Division for consideration upon the merits. The Appellate Division thereupon passed upon the 209 findings of fact and conclusions of law contained in the decision of the lower court and reversed 207 of them as " unnecessary." It reversed as against the weight of the evidence the two which remained, viz., a finding of fact that the mother was not a desirable custodian and a conclusion that custody should be awarded to the father. The Appellate Division order granted the custody of the child to the mother except that the father was awarded custody for one day each week and for one month each year. The order was affirmed by the Court of Appeals. This marked the termination of the habeas corpus proceeding.

The annulment action came to an end soon thereafter. The husband's motion to strike out the answer as sham was denied and a few days later he abandoned the action and agreed not to defend a suit for separation previously commenced by his wife. The stipulation also provided for permanent alimony of $1,000 per month and pursuant thereto a decree of separation was entered in favor of the wife.

The defendant in the present action recognizes the right of

a wife's attorneys to recover for necessary legal services rendered to her, but he insists that this principle applies only where the services are necessary to preserve the home and family intact. The services of the plaintiffs in the habeas corpus proceeding, according to the defendant, were directly calculated to take his child away from him and to disrupt his home. It is true that no recovery is permitted against a husband for legal services furnished to his wife as plaintiff in an action of divorce (*Mayper* v. *Harlan*, 215 App. Div. 767, revg. 125 Misc. 123; affd., 242 N. Y. 537) or for the services of detectives employed by the wife to obtain evidence for a divorce even though the husband's conduct may create a reasonable suspicion of adultery. (*Lanyon's Detective Agency* v. *Cochrane*, 240 N. Y. 274.) The theory of such decisons in favor of the husband is, however, that the purpose of the services is to dissolve the marital relationship rather than to " protect or support the wife in her condition as such." (*Lanyon's Detective Agency* v. *Cochrane*, *supra*, at p. 277.) Legal services furnished to a wife as plaintiff in a *separation* action have been uniformly regarded as necessaries for which a recovery may be had against the husband in a proper case. (*Elder* v. *Rosenwasser*, 238 N. Y. 427; *Elder* v. *Cochrane*, 209 App. Div. 665; *Naumer* v. *Gray*, 28 id. 529; *Lanyon's Detective Agency* v. *Cochrane*, *supra*, at p. 277; *Horn* v. *Schmalholz*, 150 App. Div. 333.) Surely a decree of separation and a provision therein regarding the custody of the children of the marriage disrupts the home and family as effectively as would an order in a habeas corpus proceeding instituted by the mother for the custody of the children. If legal services rendered to a plaintiff wife in a separation action are necessaries for which recovery may be had against the husband, there appears to be no sound reason for a contrary holding where the services are furnished to the wife as relator in a habeas corpus proceeding. As the Supreme Court of Massachusetts well said in *Conant* v. *Burnham* (133 Mass. 503, at pp. 504, 505): " In a general way, it may be said that whatever naturally and reasonably tends to relieve distress, or materially and in some essential particular to promote comfort, either of body or mind, may be deemed to be a necessary, for which a wife, under proper circumstances, may pledge her husband's credit. * * * There may be occasions when such [legal] services are absolutely essential for the relief of a wife's physical or mental distress. Suing out a writ of habeas corpus to deliver herself from unjust and illegal imprisonment, or to regain possession of her child, might, under peculiar circumstances, furnish illustrations of a strong necessity."

In the case at bar the habeas corpus proceeding was instituted

by the husband and not by the wife. It was the husband who left the home and thereafter sought to take from its mother the four-year-old child. He is, therefore, in no position to urge, as he does, that the services of his wife's attorneys in *defending* the habeas corpus proceeding were aimed at the disruption of his home and family and are accordingly not necessaries. *Matter of Boulware* (144 Misc. 235), cited by the defendant, is not in point. No ruling was there made that the father of the children could not be held liable for the expenditures incurred by the trustees of the mother's estate in defending a habeas corpus proceeding instituted by the father. That question was not even considered. Moreover, the proceeding had been decided in favor of the father.'

The defendant's contention that the State Constitution protects a person suing out a writ of habeas corpus from charges other than costs taxed in connection therewith is as ingenious as it is lacking in judicial precedent to support it. None of the cases referred to by the defendant hold that a husband may put his wife to great expense in successfully defending a habeas corpus proceeding instituted by him without any liability on his part for the legal services rendered to her. In *Matter of Teese* (32 App. Div. 46) the holding was not, as claimed by the defendant, that the total amount for which the appellant could be held liable was the statutory taxable costs. The reason for reversal in that case was that the costs of the reference assessed against the parent by the lower court were fixed *ex parte* and without an opportunity on his part to be heard. The order of the Appellate Division remitted the matter to the Special Term " to take proof as to the aggregate amount of disbursements legally payable to the referee and stenographer under the statute or any stipulation " and directed that the final order be amended by inserting said amount as a charge against the appellant. The remarks of the court that, " It would be a reproach to the administration of justice in this State for any court to compel a parent, who had not voluntarily agreed to do so, to pay $3,000 in judicial expenses in order to secure an adjudication upon his claim to the custody of his children," were directed at the procedure adopted by the lower court in appointing a referee instead of hearing the testimony itself. The question was, however, academic, because the reference had been had upon the consent of the parties. The holding was merely that the parent was nevertheless entitled to be heard on the fixation of the expenses of the reference chargeable against him.

The defendant concedes that costs may properly be assessed in the habeas corpus proceeding. In fact the Court of Appeals ordered him to pay the costs of the habeas corpus proceeding and

he complied with that direction. Clearly the liability for such costs constitutes some restriction upon what he refers to as " the free and untrammeled exercise of the right to invoke the writ of habeas." There is nothing in the Constitution or in any case cited by counsel or discovered by the court which lends support to the proposition that no other restriction of any kind may be imposed in any event. No authority has been referred to which holds that a husband's liability for necessaries furnished to his wife does not extend to a case where the necessaries are such by reason of the husband's act in suing out a writ of habeas corpus. To hold with the defendant here would mean that a wife without funds would be at the mercy of a husband who chose — as did the present defendant — to engage an imposing array of legal talent to represent him in a habeas corpus proceeding against her. Without means of her own, and unable to pledge her husband's credit, she would be obliged to defend the proceeding without counsel to represent her. The court is of the opinion that the provision in the State Constitution guaranteeing the writ of habeas corpus was not intended to and does not confer upon a relator any such immunity from his otherwise existing obligation to support his wife and supply her with necessaries. That the necessaries are legal services rendered in resisting the proceeding should not alter this conclusion.

It is true, as the defendant urges, that " if a husband makes provision for his wife, who is living separate, to an amount to which she assents as satisfactory, he is not liable to persons furnishing her with necessaries." This principle of law is, however, inapplicable here, since the temporary arrangement between the defendant and his wife — which called for the payment of the latter's household bills, and, in addition, twenty-five dollars per week — was clearly not intended to cover all of the wife's expenses. The defendant himself testified that the arrangement was not to include unusual or extraordinary expenses. His conduct in joining in the application for a reasonable counsel fee to his wife in the annulment action confirms this interpretation of the scope of the arrangement. In the circumstances there appears to be no merit in the contention that the wife was obliged to pay her attorneys from the comparatively small allowance received by her from the defendant prior to the order in the annulment action which awarded $1,250 per month as temporary alimony.

It is upon the provisions of this very order that the defendant bases another of his defenses. He maintains that the order definitely and conclusively fixed and determined the measure of his obligation to furnish his wife with necessaries and that, therefore, he is under no independent liability to the plaintiffs. Under

ordinary circumstances this would undoubtedly be so. (*People ex rel. Commissioners of Charities* v. *Cullen,* 153 N. Y. 629; *Turner* v. *Woolworth,* 221 id. 425; *Elder* v. *Rosenwasser, supra.*) " The rule is that alimony, when allotted, measures the husband's duty of support." (*Turner* v. *Woolworth, supra,* at p. 429.) The order awarding the alimony and counsel fee was not, however, the usual and ordinary one. It expressly excluded from its scope any liability which might rest upon the husband for legal services and disbursements in the habeas corpus proceeding then pending. The court's opinion upon the alimony motion clearly indicated that, in accordance with the request of the wife's attorneys, their right to recover for their services in the habeas corpus proceeding was particularly reserved. In this situation it would seem that the order awarding alimony and counsel fee in the annulment action by its very terms does not constitute the full measure of the husband's duty of support and, therefore, does not bar the present action. There appears to be no merit in the defendant's claim that the order is a nullity in so far as it purports to reserve from its operation any liability for services and disbursements in the habeas corpus proceeding. It was difficult, if not impossible, at the time the order was made to estimate how long the habeas corpus proceeding would continue, and the circumstances, therefore, amply justified the court in exercising its discretion as it did. No satisfactory reason is advanced for holding that the court was without power to make such a reservation in its order. In fact the order was affirmed in all respects upon the husband's appeal from " each and every part of said order, as well as from the whole thereof."

We come now to the defenses and counterclaims. The first defense charges the plaintiffs with having conspired to cause the child to make certain improper and unfit associations, thus forcing the defendant to bring the habeas corpus proceeding. The evidence establishes, however, that there is no basis in fact for this defense. The second defense proceeds on the theory that the plaintiffs conspired to defeat the annulment action by advising their client to verify a false answer therein. The difficulty with this defense is that the proof fails to substantiate the charges made against the plaintiffs. The latter appear to have acted honorably and honestly in a sincere effort to protect their client's interests without transcending the limits of propriety or good ethics. Certainly the defendant has failed to establish that they knowingly attempted to interpose a false answer on behalf of their client. The third defense is predicated upon the allegations of the second and falls with it. The fourth defense charges a conspiracy on the part of the plaintiffs to introduce false testimony at the trial of the habeas

corpus proceeding. This defense is as unfounded in fact as are its predecessors. The counterclaims seek damages upon the basis of the allegations previously set up as defenses. In view of the finding that the evidence does not substantiate these allegations of misconduct on the part of the plaintiffs, the counterclaims must be dismissed upon the merits. The partial defense is predicated upon the award of temporary alimony and counsel fee in the annulment action and upon the defendant's compliance with the order making that award. As the order expressly excepts any liability for counsel fees or disbursements arising in connection with the habeas corpus proceeding, the partial defense must fall.

As to the defense that a husband is not liable for necessaries furnished upon the exclusive credit of his wife, it need only be observed that the proof establishes that the legal services were not rendered in reliance upon the sole credit of the wife.

The claim that there may be no recovery for the wife's expenditures in the habeas corpus proceeding because there was no proof that the payments were made out of the wife's separate estate is likewise without merit. The evidence shows that no provision was made by the defendant for the making of such payments and that his wife, therefore, must have paid the disbursements from funds which she had a right to expend as she wished and which, therefore, constitute her " separate estate."

There remains for consideration only the value of the plaintiffs' services. They ask judgment for $100,000, less $4,060.76 received on account, and for the assigned disbursements of the defendant's wife, amounting to $8,364.76. Taking into consideration the result of their services, the importance of the controversy to their client, the novel and difficult questions involved, the financial circumstances of the defendant, the time necessarily expended in the work, and the skill and proficiency exhibited, the court is of the opinion that the reasonable value of the plaintiffs' services is $40,000.

The motion to strike out paragraphs 13th to 16th of the reply to the amended answer is granted with an exception to the plaintiffs. In accordance with the stipulation entered into at the commencement of the trial, a verdict is directed in favor of the plaintiffs for $35,939.24, with interest on $10,000 thereof from July 2, 1928, and on $25,939.24 thereof from September 3, 1931, plus $8,364.76, with interest thereon from September 3, 1931, together with the costs and disbursements of this action.